TRINA A. HIGGINS, United States Attorney (No. 7349)
NATHAN H. JACK, Assistant United States Attorney (No. 17074)
Attorneys for the United States of America
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: (801) 524-5682

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>WALLY MARTINEZ,<br><br>        Defendant. | Case No: 2:01-cr-00564-TC-1<br><br>OPPOSITION TO MOTION TO REDUCE SENTENCE UNDER 18 U.S.C. § 3582(c)(1)(A)<br><br>Judge Tena Campbell |

      Wally Martinez relies on an amendment to the guidelines, U.S.S.G. § 1B1.13(b)(6), that exceeds the scope of the authority Congress granted the Sentencing Commission. He claims that the First Step Act's amendment to the § 924(c) sentencing structure—making his sentence unusually long compared to how he would be sentenced today—creates an extraordinary and compelling reason for reducing his sentence. But subsection (b)(6) contravenes § 3582, especially since Congress itself expressly limited the effect § 924(c)'s change to pending cases only.

      Martinez must also show that the § 3553(a) sentencing factors favor a sentence reduction, and that he is not a danger to others. He hasn't. With an extensive criminal history and an even

longer disciplinary record while incarcerated—including numerous violent incidents after achieving sobriety—he remains a danger to the public. This Court should deny his motion.

I.      **Statement of Facts**

Wally Martinez committed three armed robberies in three months: at a Payless Shoes store, a Papa John's, and a credit union. PSR ¶¶ 14-20. At the Payless, Martinez's companion pointed a gun at the clerk's face to get her to open the cash register and remove the surveillance tape while Martinez stood as look out. *Id*. ¶¶ 15-16. They took $60. *Id*. ¶ 16. At the Papa John's, Martinez flashed a gun while his companion stole money from the cash register. *Id*. ¶ 17. And before entering the credit union, Martinez racked a round in his semi-automatic handgun and told his companion he would shoot anybody who tried to stop them. *Id*. ¶ 20. They entered, and Martinez's companion passed a note to a teller stating "this is a robbery" and demanding they "put all the money on the counter." *Id*. ¶ 18. They took $2,552. *Id*.

Because Martinez had a gun at each robbery, he was charged with three counts of possession of a firearm during a crime of violence under § 924(c), in addition to one count of bank robbery, two counts of Hobbs Act robbery, and one count of felon in possession. PSR at 1. At the time, multiple § 924(c) convictions were stacked in the same proceeding. So the initial count carried a 5-year consecutive sentence, and the remaining counts carried 25-year consecutive sentences. *Id*. With a guidelines range of 120-150 months and a mandatory 55-year consecutive sentence, the court reluctantly sentenced Martinez to 65-years' imprisonment. Doc. 111 at 1 (Judgment). Congress has since amended, through the First Step Act, § 924(c)'s sentencing structure to prevent stacking multiple convictions in an initial proceeding. Under current law, subsequent violations of § 924(c) carry a mandatory 25-year consecutive sentence only after the initial conviction becomes final. 18 U.S.C. § 924(c)(1)(C).

Martinez has had a difficult time in prison. In his 20+ years in confinement, he has racked up over 50 disciplinary reports, including multiple incidents of assault and possession of a dangerous weapon. Doc. 191-4 (disciplinary report).

## II.     Argument

This Court may not reduce a sentence unless it finds "extraordinary and compelling reasons" warrant a reduction, "after considering the factors set forth in section 3553(a)." 18 U.S.C. § 3582(c)(1)(A)(i). Martinez relies on subsection (b)(6) outlining unusually long sentences as an extraordinary and compelling reason for relief, but Congress did not grant the Sentencing Commission authority to contravene federal statutes.

In any event, this court can dodge this dilemma because the § 3553(a) sentencing factors preclude relief, and Martinez remains a danger to the public.

### A.  The § 3553(a) factors cut against granting a reduction, and Martinez remains a danger to the public.

This court may begin and end with the § 3553(a) sentencing factors. *See United States v. Hald*, 8 F.4th 932, 938, 942 (10th Cir. 2021) (noting that a district court may consider the compassionate release requirements in any order). Extraordinary and compelling reason or not, the court may not grant Martinez's motion without considering the § 3553(a) sentencing factors and determining that "the defendant is not a danger to the safety of any other person or the community." 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. §1B1.13. Martinez fails both hurdles. The sentencing factors weigh against granting the motion, and Martinez remains a danger to the public.

Begin with "the nature and circumstances of the offense[s]." 18 U.S.C. § 3553(a)(1). Martinez and his codefendants committed three armed robberies over the span of three months. These are not only crimes of violence, but Martinez carried a firearm to each one and even

3

brandished it.  True, they did not steal much money.  But they traumatized the victims by holding them at gunpoint.  PSR ¶¶ 14-22.  One victim was "shaken and crying" after the robbery, forced to change jobs for fear of retaliation.  PSR ¶¶ 14, 26.  Another victim experienced nightmares and anxiety.  PSR ¶ 24.  Meanwhile, Martinez "thought it was funny."  PSR ¶ 26.

Consider next "the history and characteristics of the defendant."  18 U.S.C. § 3553(a)(1).  Despite being just 23 years old at the time of the armed robberies, Martinez already had a criminal history score of 14, putting him in Category VI.  PSR ¶ 90.  In addition to 20 juvenile adjudications (multiple incidents of weapons possession, theft, and an aggravated assault), Martinez had been convicted of stealing a car, leading officers on a high-speed chase, assault and tampering with a witness (for hitting the victim multiple times to get them to not testify against him), and drug possession.  PSR ¶¶ 82-86.  And despite achieving sobriety, taking classes, and developing skills, Martinez has not changed these violent tendencies.  He continues to assault others, including corrections officers, and possess dangerous weapons.  Doc. 191-4.

That leads to "the need for the sentence imposed … to protect the public from further crimes of the defendant."  18 U.S.C. § 3553(a)(2)(C); *see also* U.S.S.G. § 1B1.13(a)(2) (withholding compassionate release unless the court determines that "the defendant is not a danger to the safety of any other person or to the community").  Martinez remains a danger to the public.  His disciplinary record while incarcerated spans 23 pages with over 50 incidents.  Doc. 191-4.  The most recent entries cover assaulting an officer, fighting with another person, possessing a dangerous weapon (6" metal weapon sharpened to a point), assaulting another inmate, and possessing another dangerous weapon.  Doc. 191-4 at 1-3.  All that within the past 5 years—after he achieved sobriety.  And that's just the tip of the iceberg.  Before 2018, he had

4

multiple incidents of assault with serious injury (May 2015, April 2006), and possessing a dangerous weapon (December 2014, August 2012, January 2006, May 2004).

Martinez attempts to downplay his most recent assault of an officer. He claims that a disagreement with a corrections officer led that officer to strike him first before Martinez retaliated. Motion at 18. Even if all that were true, it does not—as Martinez claims—"support[] a finding that he is not a danger to the community." *Id*. He struck an officer. Nor does it erase his other recent incidents of fighting with another inmate (which included hitting in the head and upper torso), possessing a dangerous weapon, and assaulting another inmate. Doc. 191-4 at 1-3.

Martinez hangs his hat on his supposed rehabilitation, claiming it favors a reduction. Motion at 18-19. But given his continued disciplinary issues—including multiple violent incidents—the United States fails to see sufficient rehabilitation. It commends Martinez for achieving sobriety, furthering his education, and developing skills. But his criminal history combined with his track record in prison shows that he continues to pose a danger to the public.

Martinez also cites the sentencing disparity with his companions. 18 U.S.C. § 3553(a)(6). Evans, with whom Martinez robbed the Payless and Papa John's, pleaded guilty to two counts of brandishing a firearm during a crime of violence (for other robberies, not the two he did with Martinez) and was sentenced to 32 years. Motion at 5-6. A few years ago he moved for compassionate release, and his sentence was reduced to 22 years. *United States v. Evans*, No. 2:01-CR-603-DAK, 2021 WL 1929798, at *5 (D. Utah May 13, 2021). Lucero, with whom Martinez robbed the credit union, cooperated with the government and received a sentence of 46 months. Motion at 5.

Martinez, who neither pleaded guilty nor cooperated with the government, is not similarly situated to either of these defendants. On top of that, Evans had "a completely clean

5

record for the past 8 years" preceding the court's ruling. *Evans*, 2021 WL 1929798, at *4. Martinez, on the other hand, continues to engage in violent conduct.

### B. Martinez's cannot rely on subsection (b)(6) as an extraordinary and compelling reason, and his other reasons do not provide independent grounds for relief.

Martinez identifies two grounds for compassionate release: his "unusually long sentence" under subsection (b)(6), and "other reasons" under subsection (b)(5). Both fail.

#### 1. The Sentencing Commission lacks authority to declare that a change in law can be grounds for compassionate release.

Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for [a] sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). Such a delegation of authority, however, "is not unlimited." *Batterton v. Francis*, 432 U.S. 416, 428 (1977). Even when reached through an exercise of delegated authority, an agency's interpretation of a statute must be set aside if the agency's interpretation is not "reasonable." *Mayo Found. for Med. Educ. & Research v. United States*, 562 U.S. 44, 58 (2011) (internal quotation marks omitted); *see Batterton*, 432 U.S. at 428. An agency cannot adopt an impermissible reading of the statute—like a reading that exceeds the gap left by Congress. *See Mayo Found.*, 562 U.S. at 53-58; *Batterton*, 432 U.S. at 428.

The Sentencing Commission in particular "was not granted unbounded discretion," and as the Supreme Court has explained, "[b]road as" the Commission's "discretion may be," it "must bow to the specific directives of Congress." *United States v. LaBonte*, 520 U.S. 751, 753, 757 (1997); *cf. Mistretta v. United States*, 488 U.S. 361, 379 (1989) (reasoning that the discretion vested in the Commission does not violate the nondelegation doctrine because the Sentencing Reform Act "sets forth more than merely an 'intelligible principle' or minimal standards" to guide that discretion). In the Sentencing Reform Act, itself, Congress directed the Commission

6

to ensure that its guidelines and policy statements remain "consistent with all pertinent provisions of any Federal statute." 28 U.S.C. § 994(a). And Congress authorized the Commission only to "make *recommendations to Congress* concerning modification or enactment of statutes relating to sentencing." *Id.* § 995(a)(20) (emphasis added).

### a. Subsection (b)(6) conflicts with Section 3582(c)(1)(A)'s plain text, context, and purpose.

Section 3582(c)(1)(A) provides an "except[ion]" to the overarching principle of federal sentencing law that a "federal court generally 'may not modify a term of imprisonment once it has been imposed.'" *Dillon v. United States*, 560 U.S. 817, 819 (2010) (quoting 18 U.S.C. § 3582(c)). Congress plainly instructed that any reason sufficient to overcome that general principle must be "extraordinary and compelling." 18 U.S.C. § 3582(c)(1)(A)(i). No reasonable interpretation of that phrase's text, particularly when considered in light of the statute's structure and purpose, can encompass nonretroactive or intervening changes in law. The Commission's interpretation of the statute as set forth in subsection (b)(6) is unreasonable and therefore invalid.[1] *Mayo Found.*, 562 U.S. at 58; *see LaBonte*, 520 U.S. at 753 (invalidating Guidelines amendment where "the Commission's interpretation is inconsistent with [the statute's] plain language").

To justify a sentence reduction under Section 3582(c)(1)(A)(i), a proffered reason must be both "extraordinary" and "compelling." As a matter of plain language, an intervening change

---

[1] The Supreme Court has not addressed what deference is owed to the Commission's interpretations of a statute. *DePierre v. United States*, 564 U.S. 70, 87 (2011). This court need not resolve the question because the statute unambiguously excludes the Commission's chosen interpretation. *See, e.g., LaBonte*, 520 U.S. at 762 n.6 ("Inasmuch as we find the statute at issue here unambiguous, we need not decide whether the [Sentencing] Commission is owed deference under *Chevron*."); *Neal v. United States*, 516 U.S. 284, 295 (1996) (declining to "decide what, if any, deference is owed" to the Sentencing Commission's "alleged" interpretation of 21 U.S.C. § 841(b)(1)).

in the law is neither. The court of appeals has determined that changes in law can qualify as extraordinary and compelling reasons in some circumstances, *see United States v. McGee*, 992 F.3d 1035, 1047-1048 (10th Cir. 2021), but has yet to consider the amended policy statement.

Congress's decision not to apply a statutory change in sentencing law retroactively, in particular, is neither extraordinary nor compelling. Consistent with the "'fundamental canon of statutory construction' that words generally should be 'interpreted as taking their ordinary, contemporary, common meaning . . . at the time Congress enacted the statute,'" *Wisconsin Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2074 (2018), the word "extraordinary" should be understood "to mean 'most unusual,' 'far from common,' and 'having little or no precedent,'" *United States v. McCall*, 56 F.4th 1048, 1055 (6th Cir. 2022) (en banc) (quoting *Webster's Third New International Dictionary of the English Language* 807 (1971) (*Webster's*)). Far from being unusual, uncommon, or unprecedented, a defendant's lawfully imposed sentence simply reflects the law at the time he was sentenced.

Here, Martinez invokes Congress's decision not to extend the First Step Act's amendment to § 924(c) to defendants like him as a change in law warranting a sentence reduction. In § 403(b) of the Act, however, Congress made the deliberate choice not to make that amendment applicable to defendants who had been sentenced before the Act's enactment, specifying that the change would apply only "if a sentence for the offense has not been imposed as of such date of enactment." § 403(b), 132 Stat. 5222. In so doing, Congress adhered to "the ordinary practice" in "federal sentencing" of "apply[ing] new penalties to defendants not yet sentenced, while withholding that change from defendants already sentenced." *Dorsey v. United States*, 567 U.S. 260, 280 (2012); *cf.* 1 U.S.C. § 109 (general nonretroactivity provision).

Given Congress's deliberate choice not to make the First Step Act's change applicable to defendants who had already been sentenced, "there is nothing 'extraordinary' about" the fact that Martinez's sentence reflects the statutory penalty that existed at the time he was sentenced. *United States v. Thacker*, 4 F.4th 569, 574 (7th Cir. 2021). That sentence "was not only permissible but statutorily required at the time." *United States v. Maumau*, 993 F.3d 821, 838 (10th Cir. 2021) (Tymkovich, C.J., concurring). And when Congress enacted the First Step Act, it specifically declined to disturb Martinez's sentence for his subsequent § 924(c) violations, even as it made other (previous) statutory changes applicable to defendants previously sentenced. In § 404 of the same Act, for example, Congress expressly enacted a mechanism allowing defendants convicted under certain drug statutes (those for which penalties had been modified by certain provisions of the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372) to seek retroactive application of those statutory changes in their cases. Section 404 authorizes a sentencing court to "impose a reduced sentence as if [those provisions] of the Fair Sentencing Act" had been in effect at the time of the defendant's offense. § 404(b), 132 Stat. 5222. But Congress simultaneously declined to disturb § 924(c) sentences that had already been imposed notwithstanding the different penalties that § 403 would require courts to apply at future sentencings.

A nonretroactive change to a statutory provision likewise cannot constitute a "compelling" reason for a sentence reduction. When Congress enacted the Sentencing Reform Act of 1984, "[c]ompelling" meant (and still means) "forcing, impelling, driving." *McCall*, 56 F.4th at 1055 (quoting *Webster's* 463). Thus, for a reason to be "compelling" under Section 3582(c)(1)(A)(i), it must provide a "forcing, impelling, [or] driving" reason to disturb the finality of a federal sentence. *Id.* (internal quotation marks omitted). Even beyond the First Step Act's

9

explicit determination not to apply the amendment to § 924(c) retroactively, ordinary principles of nonretroactivity already consider, and reject, the notion that changes in statutory law generally should be applied retrospectively. Congress enacts new sentencing statutes against a background principle, codified in 1 U.S.C. § 109, that a criminal statute does not change the penalties "incurred" under an older criminal statute "unless the repealing Act . . . so expressly provide[s]." The "strong presumption against statutory retroactivity" "is 'deeply rooted in our jurisprudence' and 'embodies a legal doctrine older than our Republic.'" *United States v. Jenkins*, 50 F.4th 1185, 1198 (D.C. Cir. 2022) (quoting *Landgraf v. USI Film Prod.*, 511 U.S. 244, 265 (1994)). To treat a nonretroactive change in the law as a "compelling" reason to disturb a final sentence would thus undo the balance already struck by ordinary nonretroactivity principles. Nothing about a nonretroactive change in the law forces, impels, or drives such a nonsensical outcome.

Any disparity between Martinez's sentence and the sentence he would receive today is the product of deliberate congressional design—namely, Congress's decision not to make the First Step Act's change to § 924(c) applicable to defendants who had already been sentenced. As the Supreme Court has recognized, such "disparities, reflecting a line-drawing effort, will exist whenever Congress enacts a new law changing sentences (unless Congress intends re-opening sentencing proceedings concluded prior to a new law's effective date)." *Dorsey*, 567 U.S. at 280. And treating Congress's express adherence to "ordinary practice" in federal sentencing, *id.*, "as simultaneously creating an extraordinary and compelling reason for early release" would contravene various canons of construction, *United States v. Andrews*, 12 F.4th 255, 261 (3d Cir. 2021).

Accordingly, a nonretroactive change in the law cannot serve as either an "extraordinary" or a "compelling" reason for a sentence reduction in isolation or as adding to a package of such

"reasons." 18 U.S.C. § 3582(c)(1)(A)(i). Whether considered alone or in combination with other asserted factors, the possibility that a previously sentenced defendant might receive a lower sentence if he were sentenced today is a "legally impermissible" consideration for purposes of determining whether an extraordinary and compelling reason exists. *Jenkins*, 50 F.4th at 1202 (internal quotation marks omitted); *see United States v. Jarvis*, 999 F.3d 442, 444 (6th Cir. 2021) (explaining that a prospective change to sentencing law is a "legally impermissible ground" for finding an "extraordinary and compelling reason," even when it is "combined with" other considerations).

        b.    **Section 3582(c)(1)(A)(i)'s context further confirms that the term "extraordinary and compelling" cannot encompass intervening changes in law.**

Other features of the statutory scheme confirm that the phrase "extraordinary and compelling reasons" does not encompass changes in law. Most notably, in the very next paragraph of Section 3582(c), Congress expressly addressed the retroactive application of some changes in law. In Section 3582(c)(2), Congress authorized courts to modify a term of imprisonment where a defendant was sentenced "based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c)(2); *see* 28 U.S.C. § 994(u) (directing the Commission to determine when such modifications are appropriate). There would have been no reason for "the same Congress, skeptical of sentence modifications as a general rule," to have "provide[d] for the retroactive application of specific changes in sentencing law in § 3582(c)(2)" had Section 3582(c)(1)(A)(i) "already covered all legal developments, retroactive or not." *McCall*, 56 F.4th at 1056. That Congress did not similarly provide the Commission or district courts with authority to revisit sentences in light of statutory amendments or changes in decisional law suggests that Congress did not intend for § 3582(c)(1)(A) to reach such changes.

11

Reducing sentences based on intervening changes in the law also would undermine congressional design more generally because a motion brought pursuant to 28 U.S.C. § 2255 is the "remedial vehicle" Congress "specifically designed for federal prisoners' collateral attacks on their sentences." *Jones v. Hendrix*, 599 U.S. 465, 473 (2023); *see Thacker*, 4 F.4th at 574. (explaining that Section 2255 provides the "principal path" that Congress has "established for federal prisoners to challenge their sentences" after they have become final). Treating a nonretroactive change in the law as an "extraordinary and compelling" reason for a sentence reduction would allow defendants to "avoid the restrictions of the post-conviction relief statute by resorting to a request for compassionate release instead." *United States v. Crandall*, 25 F.4th 582, 586 (8th Cir. 2022). It "would wholly frustrate explicit congressional intent to hold that [defendants] could evade" those restrictions "by the simple expedient of putting a different label on their pleadings." *Preiser v. Rodriguez*, 411 U.S. 475, 489-90 (1973). Congress surely "knew of its specific statutory scheme authorizing post-conviction relief" both "when it [enacted Section 3582(c)(1)(A)] in 1984 and amended it in 2018," and had "Congress intended the compassionate-release statute to act as an exception to this post-conviction framework, it would have made that intent specific." *McCall*, 56 F.4th at 1057-58 (internal quotation marks omitted).

    **c. Recognizing intervening changes in law as extraordinary or compelling reasons for a sentence reduction also would undermine a primary purpose of the Sentencing Reform Act.**

Through the Act, Congress sought to eliminate the "'unjustifi[ed]' and 'shameful' consequences" of a sentencing regime that produced "great variation among sentences imposed by different judges upon similarly situated offenders" and "uncertainty as to the time [an] offender would spend in prison." *Mistretta*, 488 U.S. at 366 (quoting S. Rep. No. 98-225, at 38, 65 (1983) (Senate Report)); *see also Neal*, 516 U.S. at 290-91 ("The Commission was born of congressional disenchantment with the vagaries of federal sentencing and of the parole system").

12

The practices of federal courts and the Parole Commission left "each judge . . . to apply his own notions of the purposes of sentencing," resulting in an "astounding" and "inevitable disparity" in sentencing that was "not justified by differences among offenses or offenders" and was "unfair both to offenders and to the public." Senate Report at 38, 41, 45. "A primary goal" of the Act was "the elimination of unwarranted sentencing disparity." Senate Report at 52. In "overhaul[ing] federal sentencing practices" by "abandon[ing] indeterminate sentencing and parole," Congress sought to "channel[ ] judges' discretion by establishing a framework to govern their consideration and imposition of sentence." *Tapia v. United States*, 564 U.S. 319, 325 (2011).

Consistent with Congress's goal of determinate sentencing, Section 3582(c)(1)(A) was enacted as a narrow "safety valve" for "unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances." Senate Report at 55, 121. Congress anticipated that such "justification[s] for reducing a term of imprisonment" would arise in a "relatively small number" of cases, and specifically identified severe or terminal illness as the archetype of "extraordinary and compelling circumstances" that would justify reducing a sentence. *Id.* at 55-56, 121.

Subsection (b)(6), however, purports to allow a district court to reduce a defendant's sentence when, in the judge's estimation, the defendant received "an unusually long sentence" that, accounting for nonretroactive changes in law, now represents a "gross disparity" from the sentence the court would likely impose today. U.S.S.G. § 1B1.13(b)(6). That authority is incompatible with the Sentencing Reform Act's overarching purpose and Congress's specific intent with respect to Section 3582(c)(1)(A), and it effectively reproduces the indeterminate system the Act sought to eliminate, in which judges applied their own varied "notions of the

13

purposes of sentencing." Senate Report at 38. Individual judges inevitably will have divergent views concerning the fairness of adhering to the ordinary practice of applying a change in law prospectively, whether a sentence lawfully imposed under the prior regime is "unusually long," and whether Congress's or the courts' assessment not to apply a change in law retroactively produces a "gross disparity," and what a "gross disparity" looks like. It is doubtful the Sentencing Reform Act "contained the[ ] seeds of its own destruction," *Jenkins*, 50 F.4th at 1202, and there is no basis to think that, notwithstanding the Act's express purpose to eliminate parole in favor of determinative sentencing, Congress nevertheless created such "a freewheeling opportunity for resentencing based on prospective changes in sentencing policy or philosophy," *Crandall*, 25 F.4th at 586.

The Sentencing Commission's explanation for the amendment cites a single sentence from the Senate Report to support its conclusion that Section 3582(c)(1)(A)(i) allows courts to reduce "unusually long sentences." *See* 88 Fed. Reg. at 28,258. In the relevant passage, the Senate Judiciary Committee expressed its belief that the "unusual cases in which an eventual reduction in the length of a term of imprisonment" would be "justified by changed circumstances" might include "cases of severe illness" or "cases in which other extraordinary and compelling circumstances justify a reduction of an unusually long sentence." Senate Report at 55. The Commission takes that line—which is ambiguous at best—out of context and elevates that single sentence above the Act's plain text and overarching purpose. In context, the passage suggests only that Congress anticipated that the sort of "changed circumstances" that might warrant a sentence reduction would most often emerge during the duration of an "unusually long" period of incarceration—during which a prisoner might become elderly or infirm, for example. *Id.* Indeed, the passage makes clear that to justify even the reduction of an unusually

14

long sentence Congress understood Section 3582(c)(1)(A) to require the identification of particular "extraordinary and compelling circumstances." *Id.* The passage does not suggest that Section 3582(c)(1)(A) provides authority to reduce any sentence a court subsequently comes to view, in hindsight, as "unusually long."

The Commission also invokes the First Step Act of 2018's stated intent to increase the use of sentence reduction motions. *See* 88 Fed. Reg. at 28,256; § 603(b), 132 Stat. 5239. But nothing about the First Step Act's procedural amendment to Section 3582(c)(1)(A) or Congress's expectation that the amendment would lead to greater use of the provision "suggests Congress intended to change th[e] *substantive* status quo with a process-oriented amendment." *McCall*, 56 F.4th at 1060 (emphasis added). Congress's effort to allow defendants to file sentence-reduction motions directly sought to remedy perceived deficiencies in the BOP's preexisting procedures, which prevented the BOP from bringing Section 3582(c)(1)(A) motions on behalf of some defendants who satisfied longstanding criteria for relief.[2] Congress, however, did not amend the statutory requirement that reasons for a sentence reduction be extraordinary and compelling. Tellingly, the amendment explicitly conditioned a defendant's filing on a requirement that he first "exhaust[ ]" with BOP a request that BOP "bring a motion on the defendant's behalf." 18 U.S.C. § 3582(c)(1)(A). Congress could not have expected BOP to evaluate whether an intervening change in law warranted a defendant's early release from custody; indeed, BOP typically plays no role in "determining the lawfulness of individual sentences," "calculating

---

[2] *See* Sentencing Guidelines App. C, Amend. 799 (noting evidence showing "inefficiencies that exist within the Bureau of Prisons' administrative review of compassionate release applications, which can delay or deny release, even in cases where the applicant appears to meet the criteria for eligibility"); U.S. Dep't of Justice, Office of the Inspector Gen., *The Federal Bureau of Prisons' Compassionate Release Program* 53 (2013) (finding that the "inconsistent and ad hoc implementation" of BOP's "compassionate release program" has "likely resulted in potentially eligible inmates not being considered for release").

guideline ranges," or assessing the possible disparity produced by a defendant's sentence. *See Jenkins*, 50 F.4th at 1205-06. In short, nothing about the First Step Act's procedural amendment "indicates any intention on Congress's part" to "fundamentally change the nature of compassionate release." 4/5/23 Tr. 64-66 (Vice Chair Murray, delivering joint statement); *cf. Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001) ("Congress . . . does not, one might say, hide elephants in mouseholes.").

> **d. Finally, empowering district courts to apply nonretroactive changes in law to particular defendants would be in serious tension with basic separation-of-powers principles.**

In upholding the Sentencing Commission's constitutionality, the Supreme Court observed that the Commission is not vested with "the legislative responsibility for establishing minimum and maximum penalties for every crime." *Mistretta*, 488 U.S. at 396. "Congress generally cannot delegate its legislative power to another Branch," *id.* at 372, and "[w]hatever views may be entertained regarding severity of punishment, . . . these are peculiarly questions of legislative policy," *Gore v. United States*, 357 U.S. 386, 393 (1958). The Commission does not pose a nondelegation or separation-of-powers concern, the Court held, precisely because Congress delegated to the Commission "nonadjudicatory functions that do not trench upon the prerogatives of another Branch." *Mistretta*, 488 U.S. at 388. Subsection (b)(6) contravenes those limits by purporting to empower courts to ignore Congress's retroactivity determinations on a case-by-case basis.

The separation-of-powers concern is particularly apparent when one considers the Commission's directive regarding *its own* retroactivity determinations. Section 3582(c)(2) permits a defendant "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission" to move for a sentence reduction "consistent with applicable policy statements issued by the Sentencing Commission," and

16

Sentencing Guidelines § 1B1.10 identifies particular Guidelines amendments that the Commission has elected to make retroactive. *See* U.S.S.G. § 1B1.10(a), (d). In subsection (b)(6), the Commission expressly excluded "an amendment to the Guidelines Manual that has not been made retroactive" from qualifying as an extraordinary and compelling reason for a sentence reduction. U.S.S.G. § 1B1.13(b)(6); *see* 88 Fed. Reg. at 28,259. The Commission accordingly precluded courts from using compassionate release as an end-run around the Commission's own determinations concerning the retroactive application of its Guidelines amendments. But by permitting other changes in law, including a statutory change that *Congress* explicitly declined to make retroactive, to qualify, the Commission declined to afford the same respect to Congress's retroactivity determinations. That counterintuitive result cannot be squared with the Commission's statutory authority. *See, e.g.*, *LaBonte*, 520 U.S. at 757 (the Commission "must bow to the specific directives of Congress").

Indeed, the separation of powers concerns are particularly apparent with respect to § 403. In the same statute in which Congress amended Section 3582(c)(1)(A) to permit defendants to directly file sentence-reduction motions, Congress made the deliberate choice *not* to make § 403 applicable to a defendant who was sentenced before the First Step Act's enactment. Congress specified that the change would apply only "if a sentence for the offense has not been imposed as of such date of enactment." § 403(b), 132 Stat. 5222. Any disparity between Martinez's sentence and the sentence he would receive today thus is the product of deliberate congressional design, and there is no reason to think that "the same Congress that specifically decided to make these sentencing reductions non-retroactive in 2018 somehow mean[t] to use a general sentencing statute from 1984 to unscramble that approach." *Jarvis*, 999 F.3d at 444; *see Andrews*, 12 F.4th at 261 ("[W]e will not construe Congress's nonretroactivity directive as

simultaneously creating an extraordinary and compelling reason for early release. Such an interpretation would sow conflict within the statute.").

*   *   *

In sum, Martinez cannot rely on subsection (b)(6) as grounds for extraordinary and compelling reasons. The Commission lacks authority to contravene Congress's commands.

### 2. Martinez's young age at sentencing, prior addiction, and rehabilitation are not separate bases for relief.

Because Martinez cannot rely on the amendment to § 924(c)'s sentencing scheme, his other grounds fall by the wayside. Those factors—young age, prior addition, and rehabilitation—do not form a separate reason for a sentence reduction.

The cases Martinez cites considering age at sentencing did so in connection with unusually long sentences—like those from § 924(c) stacking—before the Commission amended its policy guidance. *See, e.g.*, *United States v. Maumau*, 993 F.3d 821, 837 (10th Cir. 2021) ("[A] combination of factors warranted relief, including: Maumau's young age at the time of sentencing; the incredible length of his stacked mandatory sentences under § 924(c); the First Step Act's elimination of sentence-stacking under § 924(c); and the fact that Maumau, if sentenced today, would not be subject to such a long term of imprisonment." (cleaned up)); *McCoy v. United States*, No. 2:03-CR-197, 2020 WL 2738225, at *5 (E.D. Va. May 26, 2020), aff'd, 981 F.3d 271 (4th Cir. 2020) (finding that stacked § 924(c) created sentences that were too long and that "[p]etitioner was also teenager with no relevant criminal history at the time of his offenses, making the application of such harsh penalties designed for recidivist offenders even more inappropriate"); *United States v. Gantt*, No. 10-10175-01-EFM, 2023 WL 2140151, at *5 (D. Kan. Feb. 21, 2023) (finding extraordinary and compelling reasons based on "combination" of age, length of sentence, and post-habilitation conduct); *United States v. Gregory*, No. 07-CR-

73-JED, 2021 WL 5450692, at *3-5 (N.D. Okla. Nov. 22, 2021) (finding extraordinary and compelling reason based on § 924(c) stacking, and referencing the defendant's "relatively young age" in connection with "the disparity between his sentence and those sentenced for similar crimes after the FSA"); *Bellamy v. United States*, 474 F. Supp. 3d 777, 785-86 (E.D. Va. 2020) (same).

The addiction recovery cases Martinez cites fail to support that as a factor for extraordinary and compelling reasons. Instead, those cases discuss prior addition as part of the "history and characteristics of the defendant pursuant to 18 U.S.C. § 3553(a)(1)," *United States v. Payne*, No. 94-CR-150-TCK, 2022 WL 2257044, at *6 (N.D. Okla. June 23, 2022); or only as a "confluence" with other factors. *United States v. Suggs*, No. 3:99CR244 (JBA), 2021 WL 2661874, at *7 (D. Conn. June 28, 2021) ("Neither Mr. Suggs's medical conditions, age of first contact with the justice system, history of untreated drug addiction, nor impressive rehabilitation alone warrants a sentence reduction under § 3582(c)(1)(A).").

Likewise, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C.A. § 994(t). But worse still, the rehabilitation Martinez claims isn't there. As discussed in the § 3553(a) sentencing factors, Martinez continues to rack up disciplinary reports—including violent ones—despite being sober.

### III. Conclusion

Martinez remains a danger to the public. That alone precludes relief. But he also fails to show that the § 3553(a) factors favor a reduction, and that there is an extraordinary and

compelling reason for a reduction.  This court should dismiss his motion for compassionate release.

    DATED this 17th day of January, 2024.

TRINA A. HIGGINS
United States Attorney

*/s/ Nathan H. Jack*
NATHAN H. JACK
Assistant United States Attorney
